John B. LOCKWOOD, et al., Plaintiffs,

v.

PRINCE GEORGE'S COUNTY, MARYLAND, Defendant.

No. CIV. A. AW 98–1385.

United States District Court,
D. Maryland,
Southern Division.

July 29, 1999.

Thomas A. Woodley, Washington, DC, for plaintiffs John B. Lockwood, et al.

Sean D. Wallace, Upper Marlboro, MD, for defendant Prince George's County, Maryland.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I

Presently before the Court are Plaintiffs' Motion for Partial Summary Judgment and Defendant's Cross Motion for Summary Judgment. A hearing was held on this motion on July 15, 1999. In ruling on the motion, the Court has considered the briefs of the parties, the arguments of counsel at the hearing in open court, and the entire record. For the reasons that will follow the Court will grant Plaintiffs' motion and deny in part and grant in part Defendants' motion.

### II

Plaintiffs, John B. Lockwood ("Lockwood") and seven others, bring this action against their employer Prince George's County, Maryland ("County"). Plaintiffs are current and former fire investigators, who are or were assigned to the Office of Fire Investigations of the County's Fire Department. They are seeking to recover overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* According to Plaintiffs, their shift schedules of two ten hour shifts followed by two fourteen hour shifts, followed by four days off-duty, exceeded the number of hours provided by the FLSA, and thus overtime compensation was warranted.

Defendant maintains that Plaintiffs received the proper amount of compensation because they were "employees engaged in fire protection activities" within the meaning of Section 207(k) of the FLSA. Pursuant to that section, employees engaged in fire protection activities receive overtime compensation when they work over 106 hours in a two week period. *See* 29 C.F.R. § 553.230(a). As the fire investigators shifts ranged from 34 to 48 hours per week, or a maximum of 96 hours in a two week period, Defendants state Plaintiffs were not entitled to overtime compensation.

Plaintiffs contend, however, that until June, 1997, they actually were "employees engaged in law enforcement activities" within the meaning of Section 207(k). Under the law enforcement exemption, employees receive overtime compensation when they work over 86 hours in a two week period. *See* 29 C.F.R. § 553.230(b). After June 1997, however, all of the Plaintiffs, except Plaintiff Tyrone Henson, lost the police powers that made them employees engaged in law enforcement activities. They claim that after that time they were entitled to the maximum overtime compensation based on a customary 40–hour workweek.

All fire investigators must have at least three years experience as a firefighter. Further, fire investigators are represented by the same union as the other firefighters, and the employment relationship between the Fire Department and fire investigators is governed by the same collective bargaining agreement as that of the other firefighters. However, fire investigators are assigned to a command separate from the firefighters.[1] Further, the Office of Fire Investigations has a separate budget. Moreover, fire investigators are not assigned to a particular fire station, but operate out of an office building.

Plaintiffs assert that "[a]s fire investigators, [their] primary job duty and goal is to determine the point of origin and cause of fires in the County, and when necessary, to apprehend violators of arson laws." Memorandum in Support for Partial Summary Judgment at 9. Prior to June 1997, Plaintiffs investigated a suspected case of arson from its beginning to its conclusion.

---

1. The Prince George's County Fire Department "is organized into the Office of the Fire Chief and three major commands, the Management Services Command, the Special Operations Command, and the Emergency Operations Command. The Office of Investigations is one of four offices that comprise the Special Operations Command." Memorandum in Support of Defendant's Cross Motion at 4. The firefighters are within the Emergency Operations Command.

Additionally, Plaintiffs had "same general police powers, including arrest powers as regular members of the Prince George's County Police Department." Prince George's County Code § 11–154. They carried weapons and handcuffs, made arrests, prepared and filed arrest/citation records, and applied for and obtained search warrants. After June 1997, Plaintiffs lost the power to arrest, but were still responsible for investigating the causes and origins of fires within the County. Therefore, Plaintiffs maintain that they are not engaged in fire protection activities, and thus are not subject to the exemption.

Plaintiffs filed this suit seeking a declaratory judgment that Defendant violated the FLSA, back pay compensation, liquidated damages, pre-judgment and post-judgment interests, and attorney's fees. Plaintiffs now move for partial summary judgment as to the issues of liability and liquidated damages. Defendant also moves for summary judgment.

### III

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed and all justifiable inferences drawn in her favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

█ The FLSA requires employers to pay their employees overtime for all hours worked in excess of forty during one week. 29 U.S.C. § 207(a). "There are, however, certain exceptions and exclusions.... Exemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them." *Johnson v. City of Columbia*, 949 F.2d 127, 129–30 (4th Cir.1991). In this case, the County must prove that it is entitled to the exemption with "clear and affirmative evidence." *Johnson*, 949 F.2d at 130. To determine whether Plaintiffs fall within the fire protection activities exemption, the Court must look at the "character of the investigators' responsibilities and tasks, not [at] their job title or place of work." *Carlson v. City of Minneapolis*, 925 F.2d 264, 265 (8th Cir.1991).

Both parties agree that until June, 1997, Plaintiffs were subject to the law enforcement exemption until June of 1997 as established by the criteria of 29 C.F.R. § 553.211(a).[2] The fact that after June 1997, all of Plaintiffs, except one, no longer fit within the law enforcement exemption because the County had removed the power to arrest from them is also undisputed. The parties disagree, however, about

**2.** Section 553.211(a) provides:

As used in sections 7(k) and 13(b)(20) of the Act, the term "any employee ... in law enforcement activities" refers to any employee (1) who is a uniformed or plain-clothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to

prevent and detect crimes, (2) who has the power to arrest, and (3) who is presently undergoing or has undergone or will undergo on-the-job training and/or a course of instruction and study which typically includes physical training, self-defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement techniques, community relations, medical aid and ethics.

whether the Plaintiffs fell within the fire protection activities exemption during the entire time period.

The FLSA does not define the term "fire protection activities." The Department of Labor ("DOL"), however, has promulgated a regulation which provides the Court with the necessary definition. *See West v. Anne Arundel County.* 137 F.3d 752, 760–761 (4th Cir.1998). This regulation is found at 29 C.F.R. § 553.210(a) and provides:

As used in sections 7(k) and 13(b)(20) of the Act, the term "any employee . . . in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards. The term would include all such employees, regardless of their status as "trainee," "probationary," or "permanent," or of their particular specialty or job title (e.g., firefighter, engineer, hose or ladder operator, fire specialist, fire inspector, lieutenant, captain, inspector, fire marshal, battalion chief, deputy chief, or chief), and regardless of their assignment to support activities of the type described in paragraph (c) of this section, whether or not such assignment is for training or familiarization purposes, or for reasons of illness, injury or infirmity. The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities.

Although Plaintiffs agree that they fall within the first and second criteria, they contend that Defendant cannot demonstrate, as it is required to do, that the third and fourth criteria are satisfied in this case.

Defendant, however, claims that Plaintiffs fell within the third and fourth criteria because they were and are responsible for "preventing future fires/ explosions by bringing to justice violators of the fire and explosive laws of the State of Maryland and the County." Memorandum in Support of Defendant's Cross Motion at 4. Defendant contends that Plaintiffs were subject to the normal chain of command at a fire scene, could be assigned to a fire station at any time, and were required to respond to emergency situations. The County states that Plaintiffs were required to "assist at a fire scene including operating the apparatus and possibly entering a burning building, if requested." *Id.* at 11. Further, Defendant maintains that if the fire investigators arrived first at a fire scene, they would be required to fight the fire. The County states, "[t]he fact that fire investigators are not assigned to a particular fire station and do not routinely ride on a fire engine does not defeat their purpose, that is preventing fires and assisting in suppression and control which they have been trained to do and expected to perform." Defendant's Reply at 4.

Reduced to its simplest form, Defendant's argument is twofold. First, Defendant argues that as Plaintiffs are within the normal chain of command when they arrive at a fire scene, they could be ordered to fight fires. Therefore, Defendant maintains that Plaintiffs have "the legal authority and responsibility to engage in the prevention, control or extinguishment" of fires. Secondly, Defendant argues that Plaintiffs perform "activities which are required for, and directly concerned with, the prevention" of fires because by investigating the causes and origins of fires they both bring violators of the law to justice, which has the effect of deterring future incidents. Defendant also argues that the fire investigations also prevent accidental

fires by identifying the common causes of such events.

To support its argument, Defendant relies on three cases, *West v. Anne Arundel County*, 137 F.3d 752, *Nalley v. Mayor and City Council of Baltimore, Maryland*, 796 F.Supp. 194 (D.Md.1992), and *Bond v. City of Jackson*, 939 F.2d 285 (5th Cir. 1991). All three of these cases dealt with emergency medical personnel, not fire investigators. In both *Nalley* and *West*, the local governments focused on the sentence in 29 C.F.R. § 553.210 that states that rescue and ambulance service personnel are engaged in fire protection activities "if such personnel form an integral part of the public agency's fire protection activities." The defendants in those cases argued that the courts should find the employees in those cases to be an integral part of their fire department's fire protection because of such factors as "[the] unified command structure, shared facilities, representation by the same union, and common purpose of assisting the community." *Nalley*, 796 F.Supp. at 196–97; *see West*, 137 F.3d at 761. Both courts, however, applied the four factors enumerated in Section 553.210 to the facts in that case. As the employees in those cases expressly did not have the authority to engage in fighting fires, the courts found that they did not fall within the fire protection activities exemption.[3] *See Nalley*, 796 F.Supp. at 200; *West*, 137 F.3d at 761.

Defendant contends that this Court should look at the factors provided by the local governments in those cases, such as the unified command structure and representation by the same union in making its determination. Defendant argues that the instant case should have a different result from *Nalley* and *West*, however, because here the Plaintiffs were not expressly prohibited from fighting fires, but could be requested to do so. Defendant's reliance of *Nalley* and *West* is misplaced, however, because the courts did not base their analysis on the factors considered important

by the local governments in those cases. Instead, the court applied the regulations. As the employees lacked the authority to fight fires in those cases, they could not satisfy the regulatory requirements.

Defendant's reliance on *Bond* is also misplaced. In *Bond*, the defendant had appealed an award of back pay under the FLSA to employees of the Emergency Medical Service Division of its fire department. *See* 939 F.2d 285. The district court had held that these employees were not employees engaged in fire protection activities and thus were not within the Section 207(k) exemption. The Fifth Circuit reversed and remanded. The court looked at the DOL regulations and an administrative letter ruling from the DOL Wage and Hour Division. In particular, the Fifth Circuit looked at 29 C.F.R. § 553.215 which specifically addresses ambulance and rescue service employees. *See id.* at 287–88. The court stated that these employees were within the exemption because they were trained to rescue victims from imminent danger and were regularly dispatched to fire scenes as described by the regulations and the letter ruling. *Id.* at 288.

Defendants argue that the Plaintiffs, like the EMS employees in *Bond* were cross-trained in firefighting and other skills, regularly dispatched to fire scenes, and could be called upon to rescue victims. However, the court in *Bond* relied upon a different regulation, which had different criteria, than the regulation that is applicable in this case. As the *Bond* court noted, the regulation relied upon in that case did not require that those employees "routinely perform[ed] rescues, [but] only [that] they received basic rescue training." *Id.*

■ Under 29 C.F.R. § 553.210(a), however, this Court must determine whether Plaintiffs' actual duties included the prevention, extinguishment, or control of fires. Although Defendant has argued that Plain-

---

3. In making this determination, the courts relied on 29 C.F.R. § 553.212 as well as 29

C.F.R. § 553.210. See discussion *infra* at 656–57.

tiffs could be called to do so, it has not pointed to one incident where Plaintiffs were called to perform these functions. Moreover, the Court finds that Defendant's argument is theoretical, and does not address the actual duties of the Plaintiffs, as is required in determining whether these employees fall within the exemption. Thus, Defendant has not established that Plaintiffs had the responsibility to prevent, control, or extinguish fires, as required by the third prong of 29 C.F.R. § 553.210(a).

Further, Defendant's argument that Plaintiffs prevented fires by bringing violators to justice is the same argument that the Eight Circuit found to be unconvincing in *Carlson v. City of Minneapolis,* 925 F.2d 264. In that case, five arson investigators claimed that they were not employees engaged in fire protection activities. The Eight Circuit held that the arson investigators did not fall within that exemption. The court stated that the fourth criteria of 29 C.F.R. § 553.210(a) had not been met. The court stated:

> Although the investigators work for the Minneapolis Fire Department, are assigned to fire stations, respond to fire calls, and spend time at fire scenes, they do not 'perform activities [that] are required for, and [are] directly concerned with the prevention, control or extinguishment of fires.' . . . The investigators investigate arson: they look for signs of arson at fires, follow up leads, compile evidence and assist in the arrest and prosecution of suspected arsonists.

*Id.* The court noted that the arson investigators did not extinguish or control fires. Further, the court stated that the arson investigators' job was not to prevent fires, although the City of Minneapolis had argued that they did so by removing arsonists from society and by deterring others from committing arson. *Id.* The court stated: "[t]he investigators do not anticipate, counter, or stop fires from happening; rather, work begins after fires occur when they search for incendiary origins and, if required, identify perpetrators for prosecution." *Id.* Therefore, the court affirmed the district court's conclusion that

the fourth criteria had not been met and that the arson investigators were not subject to the overtime exemption.

The DOL Wage and Hour Division issued an Administrative Letter Ruling on February 26, 1993 which adopted the analysis from *Carlson.* The Administrative Letter Ruling stated that arson investigators were not covered by the fire protection activities exemption, but fell under the law enforcement exemption. DOL, Wage & Hour Div., Ltr. Rul. (Feb. 26, 1993). It provided that "[t]he fact that the Fire Department, and not the Police Department, is the employer of the arson investigators does not require a different result, the regulation at 29 C.F.R. § 553.211(c) does not limit the category of agency by which an employee engaged in law enforcement activities may be employed." *Id.*

In light of *Carlson* and the letter ruling, the Court finds that Defendant has not established that Plaintiff performed activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, as required by the fourth prong of 29 C.F.R. § 553.210(a). The record supports a conclusion that the Plaintiffs' primary duty was to investigate the causes and origins of fires. If the Court were to accept Defendant's argument that Plaintiffs prevented fires by deterring future incidents and identifying the common causes of accidental fires, it would be reading the regulations too broadly. The FLSA and the regulations that stem therefrom are to be narrowly construed against the employer, and the Court is to look at the actual functions of the employees. *See Johnson,* 949 F.2d at 130. Although Defendant has argued that Plaintiffs *could* be required to suppress fires, it has not argued that they ever *were* required to suppress fires. Looking at the nature of the work, the Court finds, as the *Carlson* court held, that these employees are not covered by the exemption.

Plaintiffs are also entitled to summary judgment because under 29 C.F.R.

§ 553.212, Defendant must prove that the investigators spent more than 80 percent of their time performing fire protection activities. Section 553.212 provides that "[a] person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part." Although Defendant has argued that Plaintiffs would have been required to control or extinguish fires if asked, it has not established that the Plaintiffs actually spent 80 percent of their time doing such. Further, as the Court has rejected Defendant's argument concerning prevention, Defendant cannot establish that Plaintiffs spent 80 percent of their time preventing fires. Therefore, Plaintiffs are entitled to summary judgment on the liability issue.

## IV

■ Plaintiffs also move for summary judgment on the issue of liquidated damages. An employer who violates Section 207 of the FLSA is liable for unpaid wages "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(c). Pursuant to the Portal–to–Portal Act, however, the decision whether to award liquidated damages is within the discretion of the court "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [Act]." § 260. As the Fourth Circuit has explained, "[l]iquidated damages 'are considered compensatory rather than punitive in nature,' ... and constitute 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *Roy v. County of Lexington,* 141 F.3d 533, 548 (4th Cir.1998) (citations omitted). Defendant must establish by "plain and substantial" evidence that it acted with subjective good faith and

objective reasonableness. *Richard, et al. v. Marriott Corp.,* 549 F.2d 303, 306 (4th Cir.1977). This burden, however, "is a difficult one to meet, however, and '[d]ouble damages are the norm, single damages the exception....'" *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987) (quoting *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986)).

Defendant asserts that any actions or omissions on its part were reasonable and in good faith. Defendant contends that when the Supreme Court stated that the FLSA was applicable to state and local government employees in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), Defendant had a committee assess its status and compliance with the FLSA. This committee determined that all firefighters fell within the Section 7(k) exemption. According to Defendant, "[s]ince that time, any issues or questions relating to the FLSA were forwarded to the Office of Law for answering and remedial action, if necessary." Memorandum in Support of Defendant's Cross Motion at 7.[4] Defendant contends that before this suit, "[n]o fire investigator or union representative ever raised the issue of the FLSA and fire investigator status." *Id.* Defendant also notes that Plaintiff Lockwood is a union representative who has negotiated with the County over the current collective bargaining agreement. Further, Defendant maintains that "[t]he bargaining agreement also contains no distinction between fire fighters and fire investigators with respect to the FLSA and work schedules." *Id.* Defendant states, "[n]o distinction or issue was ever raised regarding the fire investigators and the County believed, and still believes, it is in compliance with the FLSA." *Id.* at 18. Further, Defendant asserts that there is not any binding Fourth Circuit precedent which conflicts with its interpretation of the exemption. Therefore, Defendant argues that liqui-

---

**4.** Although the County's paramedics brought a similar suit against Defendant in 1996, the Defendant claims that there was no mention of fire investigators in that suit, which was dismissed after the parties reached a resolution.

dated damages are not warranted, and the Court should exercise its discretion and not award them if it finds in Plaintiffs' favor.

■ The Court finds that the County did not act with subjective good faith and objective reasonableness. " 'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir.1997) Further, good faith is not "demonstrated by the absence of complaints on the part of employees." *Id.* The *Carlson* decision and the DOL Wage and Hour Division Administrative Letter, which expressly held that arson investigators did not fall within the fire protection exemption, have been in existence since the early 1990s. There is no evidence within the record to explain what, if any, steps the County took to reconcile these decisions with its policy. Defendant has not demonstrated that it "took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Martin v. Cooper Electric Supply Co. et al.*, 940 F.2d 896, 908 (3d Cir.1991). Therefore, the Court finds that Defendant has not carried its burden of proving that it was acting in good faith and with reasonable grounds. Thus, liquidated damages are mandatory pursuant to Section 216(c). Even if the Court had found that Defendant has acted in good faith and with reasonable grounds, however, the Court would not have used its discretion to limit the damages. Therefore, the Court will also grant Plaintiffs' motion as it retains to liquidated damages.

## V

The Court will grant Defendants' motion as it pertains to the statute of limitations, however. Pursuant to 29 U.S.C. § 255(a), the statute of limitations for an action alleging violations of the FLSA is two years, unless the plaintiff can establish that the violation was "willful." The Supreme Court explained the type of conduct that is to be considered "willful" in *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The Court stated:

> In common usage the word "willful" is considered synonymous with such words as "voluntary," deliberate, and "intentional." ... The word "willful is widely used in the law, and although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." The standard of willfulness that was adopted in [*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–130, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)]—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act.

*Id.* at 133, 108 S.Ct. 1677.

■ Plaintiffs have not demonstrated that Defendant voluntarily, deliberately, intentionally, knowingly, or recklessly violated the statute. The Court believes that the record supports the conclusion that Defendant's conduct was negligent, not reckless. As such, the two-year statute of limitation is applicable, and the Court will grant the Defendant's motion on this issue.

## VI

Finally, the Court will address Defendant's constitutional argument. Defendant asserts that following the analysis of recent Supreme Court cases, such as *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) and *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), FLSA should be declared unconstitutional as applied to the local government's payment of its employees. The Fourth Circuit recently ad-

dressed this issue in *West v. Anne Arundel County*, 137 F.3d 752. During the pendency of that case on appeal, the Supreme Court decision in *Printz* was issued. The Fourth Circuit requested that the parties in *West* brief the issue of whether the FLSA could still be constitutionally applied to local governments in light of *Printz*. *See West*, 137 F.3d at 756. After considering the arguments of the parties, the Fourth Circuit stated:

> Neither *Printz* nor any other Supreme Court case has specifically overruled *Garcia* .... [T]herefore, we conclude both that *Garcia* controls the disposition of that issue and that any decision to revisit *Garcia* is not ours to make.... Lower federal courts have repeatedly been warned about the impropriety of preemptively overturning Supreme Court precedent.... The Supreme Court's direction has been crystal clear: 'If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.' ... That apparently is the situation here: *Garcia* is specifically on point; *Printz's* contrary intimations are only generally instructive.

*Id.* at 760 (citations omitted). The Fourth Circuit found that the FLSA could be applied to the local government. Therefore, the Fourth Circuit expressly rejected the argument that is being raised by the Defendant in this case. This Court is bound to follow the precedent of the United States Supreme Court and the Fourth Circuit. As such, Defendant's constitutional argument must fail.

## VII

For the reasons stated the Court will grant the Plaintiffs' Motion for Partial Summary Judgment as to the liability and liquidated damages issues. The Court will deny the Defendant's Cross Motion for Summary Judgment as to those issues, but will grant the motion as to the issue of the proper statute of limitations. In light of this Opinion, the Court directs the parties to discuss the amount of damages owed to the Plaintiff. If the parties cannot reach an agreement on the amount, the Court will hold a hearing on August 23, 1999 at 9:00 a.m. to make this determination.

A separate Order consistent with this Opinion will follow.

## ORDER

In accordance with the Memorandum Opinion, it is this 29th of July, 1999, by the United States District Court for the District of Maryland, Southern Division, hereby **ORDERED**:

1. That Plaintiffs' Motion for Partial Summary Judgment [14–1] BE, and the same hereby IS **GRANTED**;

2. That Defendant's Cross Motion for Summary Judgment [15–1] BE, and the same hereby IS **GRANTED in part** as to the statute of limitations issue, and **DENIED in part** as to all other claims;

3. That the parties are directed to discuss the amount of damages owed. If the parties cannot reach an agreement on the amount, the Court will hold a hearing on August 23, 1999 at 9:00 a.m. to make this determination; and

4. That the clerk mail copies of this Memorandum Opinion and Order to all parties of record.