15-695 (La.App. 5 Cir. 12/7/16)
**STATE of Louisiana**

v.

**Michael J. REASON**

**NO. 15–KA–695**

Court of Appeal of Louisiana,
Fifth Circuit.

December 07, 2016

COUNSEL FOR PLAINTIFF/APPEL-
LEE, STATE OF LOUISIANA, Paul D.
Connick, Jr., Terry M. Boudreaux, Gail D.
Schlosser, Edward C. Milner, III, Michael
G. Morales

COUNSEL FOR DEFENDANT/AP-
PELLANT, MICHAEL J. REASON,
Christopher B. Edwards

Panel composed of Fredericka Homberg
Wicker, Jude G. Gravois, and Robert A.
Chaisson

**WICKER, J.**

Defendant, Michael Reason, appeals
his convictions for filing false public rec-
ords in violation of La. R.S. 14:133. For the
following reasons, we affirm defendant's
convictions and sentences.

**STATEMENT OF THE CASE**

On November 30, 2012, the Jefferson
Parish District Attorney filed a bill of in-
formation charging defendant, Michael
Reason, with two counts of filing false
public records in violation of La. R.S.
14:133.[1] Defendant pled not guilty to the
charges against him and waived his right
to a trial by jury. Following a bench trial,
the trial judge found defendant guilty as
charged as to the two counts of filing false
public records and sentenced defendant to
one year at hard labor on each count, with
the sentences to be deferred pursuant to
La. C.Cr.P. art. 893 and served concur-
rently.[2] This timely appeal follows.

**FACTUAL BACKGROUND**

At the time of the crimes charged, de-
fendant held the position of President of
the Harvey Volunteer Fire Company
Number 2 (HVFC2), a private, non-profit

---

1. The bill of information charged defendant
with six other crimes. However, only counts
six and eight, related to filing false public
records in violation of La. R.S. 14:133, are
before this Court on appeal.

2. The trial judge further imposed a $1,000.00
fine on each count in addition to other fees.

corporation that provides fire suppression services in Jefferson Parish pursuant to a contract with the Jefferson Parish Fire District Number 6 (the District).

Deborah Foshee, the Parish Attorney for Jefferson Parish, testified at trial that HVFC2 is a private, non-profit corporation, but that HVFC2 acts as a "creature of the state." Ms. Foshee explained that the contract between HVFC2 and the District provides that HVFC2 receives Jefferson Parish "millages...largely ad valorem taxes" as contract consideration for fire suppression services provided. Ms. Foshee testified that, in April 2011, the Jefferson Parish hotline received two |₂anonymous complaints related to defendant's actions while serving as HVFC2's President, which led to an investigation.[3]

Lieutenant Charles Cassard with the economic crimes unit of the Jefferson Parish Sheriff's Office investigated a complaint from the Jefferson Parish District Attorney's Office concerning HVFC2's financial accounting. During his investigation, Lt. Cassard reviewed HVFC2's financial documents, received pursuant to a public records request, including requisition forms completed by defendant for various purchase authorizations. Lt. Cassard questioned defendant about allegations that he purchased a penile enhancement device with HVFC2's funds and designated the purchase on an HVFC2 requisition form as "hose couplings" from the compa-

ny "Fast Size." Lt. Cassard also questioned defendant concerning allegations that he purchased custom Oakley sunglasses, which he designated on an HVFC2 requisition form as "fire goggles" from the website Oakley.com. Lt. Cassard testified that defendant did not deny completing the requisition forms or making the purchases at issue.

Paulette Mataya, HVFC2's executive assistant, testified concerning its financial accounts. She stated that HVFC2 receives money from "the parish" by a monthly direct deposit into HVFC2's general account. Ms. Mataya testified that, at the time of the alleged offenses, HVFC2 received a regular monthly deposit payment of $180,000.00.[4] She testified that she pays all utilities, payroll, and "the vast majority of [HVFC2's] expenses" each month out of the general account. Ms. Mataya testified that, although HVFC2 holds private fundraisers and obtains funding from other sources, the "monthly allotment" from the fire contract constitutes the "vast majority" of the funds in the general account.[5]

|₃Ms. Mataya testified that HVFC2 employees are required to complete requisition forms to request funds for various purchases. Ms. Mataya identified two requisition forms defendant completed and signed.[6] She first identified a requisition form requesting and authorizing the purchase of "hose couplings" for the amount of $287.92 from the company "Fast Size."

---

**3.** Ms. Foshee testified that her office completed its investigation and forwarded the complaints to the legislative auditor as well as the Louisiana Board of Ethics.

**4.** Ms. Mataya testified that, at the time of trial, the monthly deposit received from Jefferson Parish was $225,000.00.

**5.** Ms. Mataya testified that some additional, minimal funds from the sale of fire reports, a two percent insurance rebate from the State, a $500.00 monthly check from "Radiofone,"

and money from "the clerk of court" for use of the facility as a polling place, were also included in the general fund. Ms. Mataya also testified that a private account was kept separate, and fundraising money and dues were kept in that account. She did not testify to the amount of funds in the private account.

**6.** Defendant does not dispute the authenticity of his signatures on the requisition forms at issue.

That requisition form did not contain a budget code[7] and listed the purchase as a miscellaneous "charge item," with a reference that the $287.92 was charged on HVFC2's American Express credit card. The second requisition form Ms. Mataya identified at trial requested and authorized the purchase of "fire goggles" from Oakley.com for $290.00. Ms. Mataya testified that HVFC2's credit card invoices and most expenses are paid monthly from HVFC2's general account.

Ms. Mataya testified that the requisition form is an internal form created by HVFC2 to keep track of its purchases and expenses. She stated that she is not required to submit the requisition forms to the parish and testified to her opinion that the requisition forms are not a public record. However, she stated that she did submit all requisition forms in response to a public records request related to this investigation.

Lindsay Calub, a partner with Duplantier, Hrapman, Hogan, & Maher, L.L.P., was accepted as an expert in certified public accounting and auditing. He testified that he performs annual audits of HVFC2 on behalf of the legislative auditor and stated that HVFC2, as a quasi-public organization, is required to submit annual reports to the legislative auditor. He further testified to his opinion that the money HVFC2 receives pursuant to its contract with the District is public funds, but that the requisition forms created by HVFC2 are internal controls and likely not public records. The audit report of Duplantier, Hrapmann, Hogan, & Maher, L.L.P., introduced into evidence at trial, provides that "the majority of the Company's revenue is derived from this [fire] Contract."

At trial, the parties introduced into evidence a copy of the contract between HVFC2 and the District. Pursuant to the contract, HVFC2 is required to maintain and retain adequate records "showing the disbursement of all funds received." Further, the contract requires that all public funds HVFC2 receives are to be used "only for providing said fire protection services necessary . . . ."

## LAW AND ANALYSIS

On appeal, defendant challenges the sufficiency of the evidence presented against him to support his convictions for filing false public records in violation of La. R.S. 14:133, which provides:

A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:

(1) Any forged document.

(2) Any wrongfully altered document.

(3) Any document containing a false statement or false representation of a material fact.

Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.

In this appeal, defendant argues first that he did not deposit or file any record into a public office because HVFC2, as a private corporation, is not a "public office" under La. R.S. 14:133. Defendant further contends that he was not required by any law, rule, or regulation to maintain the requisition forms at issue and, thus, did not violate La. R.S. 14:133. He asserts that the requisition forms at issue do not quali-

---

**7.** Ms. Mataya testified that HVFC2 used various codes for purchase requisition forms. For example, the code "1300" indicates that the item may be personal and, thus, subject to reimbursement.

fy as public records but rather are documents that HVFC2 created and utilized only as an internal control measure to document purchases. The state ⌊₅responds that the requisition forms at issue, which reflect expenditures of public funds, are in fact public records. The state further contends that defendant, as President of HVFC2, was required to maintain those records in compliance with the Public Records Law, La. R.S. 44:1, *et seq.*, as well as the Legislative Auditor Law, La. R.S. 24:513, *et seq.*

For the following reasons, we find that defendant, as President of HVFC2, was required by law to maintain all documents reflecting expenditures of public funds, including the requisition forms at issue, and that defendant knowingly made false representations of fact on those forms. Therefore, we find the evidence sufficient to support defendant's convictions for filing false public records in violation of La. R.S. 14:133.

■ The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Bone*, 12–34 (La.App. 5 Cir. 09/11/12), 107 So.3d 49, 58, *writ denied*, 12–2229 (La. 04/01/13), 110 So.3d 574; *State v. King*, 06–554 (La.App. 5 Cir. 01/16/07), 951 So.2d

384, 390, *writ denied*, 07–0371 (La. 05/4/07), 956 So.2d 600.

■ The elements of the crime of filing or maintaining false public records are: (1) the defendant files or deposits for record in any public office or with any public official, *or* the defendant maintains as required by law, regulation, or rule, (2) with knowledge of its falsity, (3) any document containing a false statement or false representation of a material fact. La. R.S. 14:133; *State v. King*, 47,207 (La.App. 2 Cir. 06/27/12), 94 So.3d 203, 211, *writ denied*, 12–2694 (La. 05/17/13), 117 So.3d 1260; *State v. Odom*, 07–0516 (La.App. 1 Cir. 7/31/08), 993 So.2d 663; *State v. Lefear*, 07–621 (La.App. 3 Cir. 10/31/07), 970 So.2d 98.

⌊₆On appeal, defendant does not dispute that he personally completed and signed the requisition forms at issue for the purchase of "hose couplings" and "fire goggles" or that either form contains a false representation of a material fact. Rather, defendant's argument on appeal focuses on whether he was required by "law, regulation, or rule" to maintain the requisition forms at issue.

■ Under the Public Records Law, "all persons and public bodies having custody or control of any public record ... shall exercise diligence and care in preserving the public record. ..." La. R.S. 44:36.[8] "[T]he law favors a liberal construction of the public records law 'so as to enlarge rather than restrict access to public records by

---

8. La. R.S. 44:36(A) provides:

All persons and public bodies having custody or control of any public record, other than conveyance, probate, mortgage, or other permanent records required by existing law to be kept for all time, shall exercise diligence and care in preserving the public record for the period or periods of time specified for such public records in formal records retention schedules developed and approved by the state archivist and director of the division of archives, records management, and history of the Department of State. However, in all instances in which a formal retention schedule has not been executed, such public records shall be preserved and maintained for a period of at least three years from the date on which the public record was made.

the public.'" *State ex rel. Guste v. Nicholls Coll. Found.*, 564 So.2d 682, 686–87 (La. 1990), *quoting Lewis v. Spurney*, 456 So.2d 206 (La. App. 4th Cir. 1984), *writ denied*, 457 So.2d 1183 (La. 1984); *see also New Orleans Bulldog Soc'y v. La. SPCA*, 15–1351 (La. App. 4 Cir. 09/07/16), 2016 La. App. LEXIS 1638.

The Public Records Law defines a "public body" as "any . . . public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function . . ." La. R.S. 44:1(A)(1). The "custodian" of any public record is "the . . . head of any public body having custody or control of a public record . . . ." La. R.S. 44:1(A)(3). Further, the Public Records Law defines a "public record" as "[a]ll books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers . . . prepared, possessed, or retained for use . . . concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state." La. R.S. 44:1(A)(2)(a).

■ We find the evidence at trial supports a finding that defendant was required by law to maintain the requisition forms at issue. First, we find that the requisition forms at issue, utilized by HVFC2 to document purchases made with public funds from their general account, are public records that must be maintained pursuant to the Public Records Law. *See State v. Advanced Recycling, Inc.*, 02–1889 (La. 04/14/04), 870 So.2d 984, 989 (*citing Lewis, supra*, which held that corporate records which "necessarily reflect business or transactions" concerning state funds are public records)).

■ Second, we find that HVFC2 is a "public body" under the Public Records Law because it is primarily funded with government funds, renders a public ser-

vice, and is a "quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function." La. R.S. 44:1(A)(1). The contract between HVFC2 and the District for public fire services is authorized by law under La. R.S. 33:2101, which provides that a "fire protection district which maintains a full-time, regularly paid fire department may . . . enter into a contract with a private entity for the provision of fire protection services." This Court has found that volunteer fire departments similar to HVFC2, providing public fire suppression and prevention services, operate for and "in the public interest." *Terrytown Fifth Dist. Volunteer Fire Dept. v. Wilcox*, 97–322 (La.App. 5 Cir. 01/14/98), 707 So.2d 449, 451, *writ denied*, 98–0381 (La. 03/27/98), 716 So.2d 890. Moreover, the Louisiana Attorney General has opined that "a volunteer fire department that is primarily funded with public funds, and which serves a public purpose and renders a public service is classified as a quasi-public body" under the Public Records Law. Atty. Gen. Op. No. 06–0171. *See also Wilcox v. Terrytown Fifth Dist. Volunteer Fire Dept., Inc.*, 897 F.2d 765, 767–68 (5th Cir. 1990) (wherein the federal Fifth Circuit Court of Appeals, considering the Fair Labor Standards Act, determined that a Jefferson Parish volunteer fire company qualifies as an "agency of a political subdivision of the state" under the Act).

■ Third, we find that defendant, as the President or "head" of HVFC2, qualifies as HVFC2's "custodian" under the Public Records Law and was, thus, required to maintain its public records, including the requisition forms at issue. *See* La. R.S. 44:1(A)(3). Moreover, based upon the testimony and evidence presented at trial concerning HVFC2's funding, we find

that HVFC2 is also a quasi-public agency as defined under the Legislative Auditor Law, La. R.S. 24:513 (A)(1)(b)(iii)(cc),[9] and would thus be required to retain and make available its financial documents, including the requisition forms at issue, for annual review or audit by the legislative auditor.[10]

For the above reasons, we find that the evidence and testimony presented at trial prove that defendant was required by law to maintain the requisition forms at issue. Further, based upon defendant's written description of the requested purchases for "hose couplings" and "fire goggles," which were in fact requests for funds to purchase a penile enhancement device and custom-made Oakley sunglasses, we find that defendant knowingly made a false representation of a material fact on each requisition form at issue. Therefore, we find the evidence presented at trial sufficient to support defendant's convictions for filing false public records in violation of La. R.S. 14:133. Accordingly, defendant's convictions and sentences are affirmed.

## |₉ERRORS PATENT

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175

(La. App. 5 Cir. 1990). Our review revealed no errors patent in this case.

## AFFIRMED

---

9. La. R.S. 24:513, in pertinent part, provides: An organization, either not-for-profit or for profit, created to perform a public purpose and having one or more of the following characteristics:
    * * *
    (cc) The entity is the recipient of the proceeds of an ad valorem tax or general sales tax levied specifically for its operations.

10. La. R.S. 24:513 provides that "the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files, instruments, documents, films,

tapes, and any other forms of recordation of all auditees, including but not limited to computers and recording devices, and all software and hardware which hold data, is part of the technical processes leading up to the retention of data, or is part of the security system." The Louisiana Attorney General has further opined that volunteer fire departments, such as HVFC2, are a quasi-public agency that "is obligated to file with the legislative auditor an annual audit or financial statement as required [by law]." Atty. Gen. Op. No. 90–271.